The first case is 19-9000, Hamilton v. Department of Revenue, and Mr. Jones for the appellant. You may proceed. Your Honor, may it please the Court. This case is about the insolvency exception for a discharge of indebtedness. The Hamiltons and the IRS agree that there was, did arise income from discharge of indebtedness for the taxpayers. However, section 108 provides that gross income, which does provide for the income from discharge of indebtedness. Also requires that if a taxpayer is insolvent, it's not elective, rather it is required that that income be excluded from the taxpayer's tax return. In this case, taxpayer Vincent Hamilton received, because of a disability, a discharge of indebtedness from two student loans, a smaller one and a larger one. And the focus of an exclusion from discharge of indebtedness looks at, does the taxpayer's liabilities exceed their assets at the time of discharge? Unfortunately, section 108 doesn't go into a lot of detail about the definitions of those two terms, right? It doesn't define what an asset is. It doesn't define what a liability is. During the examination stage of this. Those terms in the revenue, in the tax context aren't particularly unknowable. I mean, they have traditional definitions. True. I wonder, now it looks like a $300,000 or so asset. Part of the business partnership distribution was given to the taxpayers or was acquired by the taxpayer and then transferred into their son's personal account, is that right? Yes. Does the record show the purpose of that transfer? It's a good question. So Mr. Hamilton had an injury and the stipulation of facts does specify that he, because of basically prescription drug abuse, transferred, his wife transferred those assets to the son to basically protect him because he was engaging in erratic spending behavior. It's a sensitive situation, not one that they wanted to put before everyone, but- Right, but Mrs. Hamilton then had access to her son's personal account and was able to access and use those funds, and did in fact access and use those funds, correct? Yes, so Mr. Hamilton was the one that acquired those funds initially. And they were put into a joint account. Husband and wife are separate taxpayers. They are also under the law of the state of Utah. They have separate debts. They own separate property. And Mrs. Hamilton acquired a right to those assets by them being deposited in a joint account, and she was able to pull those funds away from Vincent, and they were transferred. Does it matter that they were used to pay family expenses, to pay the mortgage and the joint obligations of Mr. and Mrs. Hamilton? The tax court certainly felt so, and said in its ruling that the taxpayers didn't show that Andrew wasn't their nominee. And so the tax court did place emphasis on that. I think that it stipulated, in fact, that the ownership of that account was Andrew's, he owned that. Well, he never used it though, did he? For this entire tax year, he didn't make a deposit or withdraw from that account, did he? I don't know that the record goes into that, frankly, but it is stipulated that he owns it. Well, it's in his name, right? The account is in his name. Well, correct, he owns it, and that is stipulated, he owns it. We're back to the terminology you started out with, which is asset and liability. Yes. And I take it, doesn't this case come down to whether the savings account is an asset of the sons or an asset of the taxpayers? It does. All right, and why wouldn't it be an asset of the taxpayers if it's being used by the taxpayers to pay their day-to-day household expenses? If I have an asset and I transfer it, I gift it, that's well within my rights to do so. And by doing that, I've made an irrevocable gift. Well, okay, was it a gift? Is that your position, that that was a gift? Certainly. Did they file a gift tax return on that gift? It was a large gift. It was a large gift. And it would trigger a reporting requirement, but I didn't see anything in the record about a gift tax return. That's correct, and it wasn't inquired into because, again, we stipulated that that account, the ownership, was borne by Andrew Hamilton. Well, his name was on the account, but isn't the absence of a gift tax return indicative that it wasn't a gift? It was still their asset. I don't know that it's indicative because, again, the agency conducts an examination and they look at these issues, right, and that we came to an agreement. You know, when you come to a stipulated fact, that fact is found. It can't be changed by the parties or this court, frankly, and we came to that agreement. Now, as an equitable matter- Wait, the agreement that Andrew's name is on the account, is that what we're talking about? That he owns it. The stipulation is that he is the owner of that account. What about the substance of the form doctrine that the tax court and the government relies upon? Certainly, and that argument is that the tax court ended up applying an equitable remedy, right? And so if there are further proceedings that are needed to flesh that out, if there isn't a satisfaction of that, fine. We could be remanded for that purpose. Well, if the issue is whether that account could be used to satisfy the creditors of the taxpayers, then isn't it appropriate to look and see whether either under a fraudulent transfer or a nominee theory, a creditor could get at that account? Sure, that is an appropriate analysis. However, we, again, we stipulated that the ownership was Andrew Hamilton's account, right? I mean, you put the son's name on the account, but the funds are being used by mom to pay mom and dad's living expenses. Understood, however, you are identifying the key term there. You said equitable ownership, right? And so can, that is a fundamental question that we've raised, right? Why can't a tax court apply an equitable theory in looking at the issue of whether this account is available to the creditors of the taxpayers? Because they do not have jurisdiction to do so. They're- Show me, you haven't cited a single case that says a tax court doesn't have jurisdiction to use an equitable theory to determine whether something is an asset of a taxpayer. Well, I disagree with that. I mean, we cited a few cases from the tax court that talk about that the tax court is not allowed to have tax consequences turn on an equitable remedy, right? And this nominee concept is squarely an equitable remedy. Tax courts all the time look at substance over form, which is what Judge Mathison already asked about. And here, what you're saying is that a taxpayer could engage in some shenanigans right before filing their tax return to hide assets and that the IRS would have no, the tax court would have no ability to look beyond the form of whatever transactions they set up to the substance. Well, although I would take exception to that because again, in like a fraudulent transfer case, that implies I owe this, right? I have to owe this and I transferred because I was avoiding a creditor. That's not what the record shows here. The transfer made was not to avoid a creditor. It was to protect Vincent from himself because he was engaging in erratic spending behavior. So under like a fraudulent transfer theory, right, you would be looking at was there an avoidance of a creditor here? And the answer is no. They made that transfer, that gift, because he was engaging in conduct that was detrimental to himself. That's it. Yeah, but the strings weren't cut. Mrs. Hamilton had the ability to use the account just like she would her own. Didn't, at least for this tax year, she exercised total dominion and control over the account to pay personal expenses. She did, but Mr. Hamilton did not, and they are separate taxpayers for purposes of the insolvency analysis. Well, but wasn't she, hadn't she basically taken over the family finances for both of them? So in that sense, when she dipped into the savings account to pay the grocery bills and the electric bill and everything else, it wasn't just paying for her bills. It was the family, and it included her husband. Agreed, however, again, that those transfers were not made to avoid the IRS. That was not the purpose. That is what the record shows. I do want to reserve my time. I think the tenor of the questions is whether the use of the savings account shows that it really wasn't the son's asset, it was really the taxpayer's asset. It began that way, and we have no dispute with that. However, a person is free to transfer their property, and again, the command over that account became Andrew's. He could have withheld at any time, and he could have withdrawn that and went away. I mean, he is the one that had the rights to do that, Mrs. Hamilton did not. And Midson Hamilton certainly did not. I take it, though, that if she can transfer money out of the savings account to pay the mortgage, she could transfer money out to pay the tax liability, too. With the permission of her son, but not without it. And that gave her a lack of control. That gave her the inability to do that. One of the disputes that I would sense from the briefs is that, is the role of state law in addressing some of these issues. And correct me if I'm wrong, but I understood you to be arguing that state law is important in how we view the status of the savings account. Could you address that? Yeah, courts have, again, this comes from the lack of a definition in 108. But courts have typically looked to state law. The Dry case in the Supreme Court applies to a collection case. Again, this is an assessment case, so there is a distinction there. Dry certainly requires that state law be analyzed to determine, and again, it goes to what Your Honor McHugh raised, can this asset be reached by a creditor? I think, likely, a fraudulent conveyance statute is the most salient point. Although, federal courts all the time apply the nominee theory to collect. Don't Utah courts apply a nominee theory, too, in determining whether a third party is entitled to the asset? I think more often, from my research, more often it's like a constructive trust, resulting trust, and fraudulent, avoidable conveyance, fraudulent conveyance analysis. All those take place under state law. Certainly, the case that the tax court cited relied on a federal Utah court case that cited purely federal law. And again, they were all nominee cases applying in federal common law, Article III courts who are exercising their equitable powers. I also, I'm running out of time here, but I would like to just address quickly, I know the court asked for supplemental appendix to look at the issue about waiver of jurisdiction. I did just want to point out on the record that, and I can file a 28-J letter, but the briefing in this case was quite unusual. Judge Foley and the tax court did not permit answering briefs, so we didn't really have an opportunity to respond to one another's arguments during the tax court session. The nominee theory was raised by the IRS counsel, and we received an opinion, again, without the opportunity to respond. When did you first raise your argument? We concede very bluntly that it was in a motion for reconsideration, again, because we didn't have an opportunity to respond in an answering brief because of the briefing schedule set by Judge Foley. And so, I wanted to make that known and clear that there was no, waiver is a known right that you waive, right? We were aware of the argument, but couldn't respond, and so we did what we felt was appropriate to respond in a motion for reconsideration to that argument. All right, counsel, we appreciate the answer. Your time's expired. Let's hear from the government now. Thank you, Your Honors, and may it please the court. Julie Avetta for the Commissioner of Internal Revenue. As the court has observed, taxation is concerned with the substance rather than the form of a transaction of a conveyance of an asset. And in a section 108 determination, the tax code is not concerned with the name of an account holder. The tax code is concerned with whether a taxpayer who is claiming an exclusion from income of a canceled debt actually realizes income from that debt. And that's determined by examining that taxpayer's assets and that taxpayer's liabilities. If the liabilities exceed the asset, forgiveness of debt doesn't earn you anything because you're still in debt. But if your assets exceed your liabilities, the forgiveness of debt is an incremental benefit to you, and that's why we do that analysis. But the scrutiny of assets is not limited simply to your property rights under state law or your presumptive property rights under state law in a bank account. The standards announced in the Carlson case in the tax court is that an asset of a debtor, even if it may be exempt from the claims of creditors under applicable state law, so we're not concerned with whether a Utah creditor can reach this asset. If that asset and the debtor's other assets exceed the debtor's liabilities, the debtor has, this is the standard, the ability to pay an immediate tax on income from discharge from debtedness. And that is clear on the facts here. Mr. Vincent Hamilton, the taxpayer, received a distribution from a partnership, a movie theater business that he owned an interest in, in excess of $300,000. Due to a family situation where his relatives wanted to be careful of his access to cash and spending, it was apparently agreed that these funds would be deposited in an account in the name of the taxpayer's son. But as Judge McHugh observed, the taxpayer's son had never used this account. Before the $300,000 were deposited in it, the account contained at most $300. And the transactions throughout the tax year at issue 2011 were all transacted by the taxpayers, not by their son. Is it true though that the son could at any time have ended any access to that account by his mother? There is no reason why he could not have as the nominal account holder. But there was clearly an agreement between the two of them that she would continue to enjoy access to this account. We do not have any record evidence of a gift tax return or any other paper. Does the record show what the agreement was? Was there testimony by the son about what the deal was with his parents? I'm sorry, there was no testimony, there was no trial. The case was submitted on the stipulated factual record, which is all that we have in the appendix. So we do not know of the existence of any agreement between the son and the mother. But we infer one based on the facts in the record, which are that the mother used the account and the son did not. The son provided to the mother account access credentials as soon as the amount was deposited. The deposit was made on April 1st, 2011. The first withdrawal from that account by the mother was $10,000 on April 6th. She then withdrew $5,000 on April 25th. And over the course of the rest of 2011, she withdrew a total of $118,000. Was the son still in medical school during this tax year? The record does not indicate that. But the inference is that he, well, the best we can tell- There were no school associated or personal expenses that he paid on behalf of himself? Not out of this account, Your Honor. The record is clear that out of this account, only his mother withdrew the funds. Now, there was another account in the record that was titled to him. And he apparently, and that is the account ending in 8117. It appears that he received payroll deposits in that account from what looks like the Navy reserves. And that money was transferred out of that account, presumably by him, only once to the taxpayer's joint account. And the rest of it seemed to be just his account that he was using. But the vast majority of the funds, the account that contained the funds that taxpayers deposited, and was the account from which taxpayers withdrew the funds, the account ending in 7450, had far greater traffic in funds, $118,000 as opposed to roughly a $12,000 to $17,000 balance throughout the year in 8117. We don't know from the stipulated record what the state was of the son's medical education in 2011. We do know that the loans were taken out prior to 2011 because Mrs. Hamilton applied for forgiveness of those loans in 2010. We also know from the record that the son was not a co-borrower on those funds. So apparently his parents procured those loans from the United States Department of Education on his behalf. Without him taking on that obligation. We also have no record of that being any sort of gift. But the inferences are all here on the record for the court to draw, and the tax court did so. The tax court said. Is the tax liability is just against Vincent, is that correct? That is correct. Okay. One of the arguments that they make is that that doesn't mean that Mrs. Hamilton is automatically liable for that tax liability. Would you agree with that? Not precisely. They did file jointly, and a tax liability on a joint return is joint and several. However, the determination of assets and liabilities under section 108 to determine whether cancellation of indebtedness is excludable is done taxpayer by taxpayer, even on a joint return. The appellants have correctly characterized that. However, we do not suggest that it is appropriate to draw from this record the inference that Mrs. Hamilton obtained any separate ownership or because she acted as the family's agent and managed the finances and paid the electric bill and paid the mortgage. But Mr. Hamilton never accessed that account, is that correct? It appears from the record that he did not. Did he have the credentials to do so? The record does not indicate whether she ever shared them with him, but the inference is that she did not, because there is a stipulated fact that the family sought to shield funds from his access. So why isn't it accurate to say that Mr. Hamilton had no control over the savings account? He didn't have the credentials, he never accessed it. Mrs. Hamilton did all the transfers and payments for expenses. He was out of the loop. I believe that is a fair characterization of the taxpayer's goals in structuring this arrangement. Whether or not he had any influence over Mrs. Hamilton's withdrawal of the funds, or her use of those funds to pay family expenses, is not clear from this record. But we do know that she was acting on his behalf and in his best interest. She was paying family expenses. She was managing all of the family finances, because he lacked the capacity to do that. There is no inference to be drawn from this record that he was anything but well served by this arrangement. She was effectively taking almost a power of attorney over this asset, which was payable to him. The partnership interest was in his name, the K1 is in the record. The funds that were a distribution were payable to him. And those funds were deposited into his son's account with the understanding that his wife was in charge of the family finances. That didn't operate to alienate those funds from Vincent. They didn't cease to be his property just because he asked someone else or agreed that someone else should be handling his finances when he lacked the capacity to do so himself. Much of your argument this morning seems to rely on the substance over form principle. And you haven't really mentioned nominee theory to support that. Do you need the nominee theory to support your argument? The nominee theory is one application of substance over form. The tax court used it here, but we submit that it's not necessary to determine whether the taxpayer meets the Carlson standard under section 108, which is do you have the ability to pay an immediate tax on income from the assets in your possession on your canceled debt? The tax court also seemed to rely on state law more than you do in your brief. At this point, in your view, is state law relevant to the issues now in this case? State law is informative, Your Honor, but state law, in fact, goes too far. Because state law looks to remedies granted to creditors. And that's a fine point to draw here, but an important one. Because we are not suggesting that the tax court implement an equitable state law remedy to provide relief to a state law creditor under state law. We are looking solely at a math problem. What are you adding up here? What assets are included in the taxpayer's assets? So going to the degree of analysis that the tax court did almost proves too much, which is could a creditor reach this asset? And under Utah law, we suggest that that finding was not made on this record, but it does appear that they potentially could. As Your Honor noted, the nominee remedy is applied in Utah, sometimes under the label constructive trust. Sometimes under the label resulting trust to this court. Unpack that analysis in the Holman case, where you said first you must look, when you are applying a remedy for a creditor, first you must look to the interest under state law, the sticks in the bundle. And then you apply the federal nominee factors to determine who's holding that bundle. That again, as I said, proves too much here. We don't need to go that far when all we're determining is whether a taxpayer can reach his assets to pay his tax on his canceled debt. And on these facts, that's clear. So there was no error in the tax court's conclusion, even though it used almost an over-corrective theory to reach it. But they can use the funds to pay their tax debt unless the owner of the account says no. Does that impact your theory at all? Not on these facts, Your Honor, because he never said no. The son has no obligation to allow them to use the money in this account to pay their taxes. So if you're eliminating all of the theories by which you ignored the son's ownership of that account, it seems to me you've got a problem because they really don't have the ability unless the son gives them that right. Well, and that's implicit in a nominee relationship is that the fact that it's a nominee relationship means that that choice is never made. The son, on different facts, the facts you described, absolutely could have completed that gift and cut off his debt. We're arguing that we don't need to get to the nominee theory, and we don't need to get to constructive trust, or resulting trust, or fraudulent conveyance, because the only issue is whether the taxpayers could reach into that account and pay their taxes. That's correct. And if that's the only issue, the taxpayers couldn't unless the son let them. The son did let them, Your Honor. Didn't let them pay their taxes, let them pay their mortgage. He let them pay anything. He was not, the record does not reflect that there was any discrimination in the amounts withdrawn, or that there was any attention paid to how Mrs. Hamilton spent those funds once they were transferred into the taxpayer's joint account. Now, the hypothetical that you posit could create a very different case. If their son, on these facts during this tax year, had instead said, stop. I disagree with how you are spending these funds. And to protect my father, or for whatever his purpose is, he cut her off as he could have as the account holder, then we would have a very different case. And then he would not be acting as the mere nominee. He would not be simply a name on the account who is tacit and permits the taxpayers to use the account as his own. Then he would be using the account as his own. That's not what these facts reflect. These facts reflect that he provided account access to his mother, and then looked away. And never accessed the account himself, never interfered with her use and enjoyment of those funds. Never made any inquiry, as far as we know, as to how the account was being used. He was using a different bank account for his purposes. And in that sense, you don't need a nominee theory because the facts are so clear. If his relationship with the account were more complicated, as your honor has posited, the analysis would be more complicated as well. On these facts, it's very simple, because he did not use the account, because he was a mere nominee, a mere nominal account holder. The funds in the account remained taxpayers' asset, and they treated them as such for the duration of the relevant tax year. Given what your opposing counsel indicated about the opportunity to file a reply brief below, would you concede that there's no waiver of the equitable powers argument? We would not so concede, your honor. It is true that the tax court ordered expedited briefing on this, but when parties find that they have additional information to provide to the tax court prior to decision, it is possible to return to the court and move for an amendment of the briefing schedule and file reply briefs if those are necessary. Also, I don't believe that it's clear on this record that the parties would have been surprised by the raising of the nominee theory in the government's brief when that was- To the extent the tax court relied on that theory for its decision, why would that issue be foreclosed for briefing on appeal for the appellant? If that's what the tax court relied on and they want to challenge what the tax court did, don't we have tenth circuit case law that says that opens the door to allow them to make that argument on appeal? Well, now an appeal, they absolutely have the right to appeal from denial of- I didn't say right to appeal, I said to make the argument they're making. You're making a waiver argument. We have a decision, United States versus Hernandez Rodriguez, that says if the court relies on a particular ground to make its decision, that the appellant can challenge that ground on appeal. Yes, and they absolutely have the right to challenge the application of the nominee theory, but they are mischaracterizing it and saying that the tax court is working at- That's not what Chief Judge Timkevits asked you, he asked you about waiver, not what the argument was. I, to respond as directly as I hopefully can here, what was waived was not the ability to challenge the application of the nominee theory. What was waived was the ability to argue that the tax court lacks jurisdiction to apply an equitable theory to reach a factual inference. All right, counsel, appreciate that. Your time has expired. Thank you. Counsel are excused. We appreciate the arguments. They were helpful, and the case shall be submitted.